UNITED STATES DISTRICT COURT  JS-6
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.  **CV 20-10571-JFW(JPRx)**                                  Date: February 3, 2021

Title:        Fernande Lyons, et al. -v- Cucumber Holdings, LLC, et al.

**PRESENT:**

   **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

   Shannon Reilly                          None Present
   Courtroom Deputy                        Court Reporter

**ATTORNEYS PRESENT FOR PLAINTIFFS:**        **ATTORNEYS PRESENT FOR DEFENDANTS:**
            None                                        None

**PROCEEDINGS (IN CHAMBERS):**    ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [filed 12/30/20; Docket No. 12]

On December 30, 2020, Plaintiff Fernande Lyons, individually and as successor in interest to the Estate of Rodolphe Lyons ("Plaintiff") filed a Motion to Remand ("Motion"). On January 11, 2021, Defendants Cucumber Holdings, LLC, d/b/a Stoney Point Healthcare Center ("Stoney Point") and California Opco, LLC ("Opco") (collectively, "Defendants") filed their Opposition. Plaintiff did not file a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's February 1, 2021 hearing calendar and the parties were given advance notice. After considering the moving and opposing papers, and the arguments therein, the Court rules as follows:

I.    **Factual and Procedural Background**

      A.    **Procedural History**

On August 27, 2020, Plaintiff filed a Complaint against Defendants in Los Angeles Superior Court, alleging claims for: (1) negligence; (2) willful misconduct; (3) violations of the Elder and Dependant Adult Civil Protection Act (California Welfare & Institutions Code §§ 15600, *et seq.*); and (4) wrongful death.[1] In her Complaint, Plaintiff alleges that Rodolphe Lyons (the "Decedent"), who was 85 years old, was admitted to Stoney Point, a skilled nursing facility, for long-term care related to his diagnosis of advanced dementia in February 2019 and suffered neglect and multiple injuries by the staff of Stoney Point during his approximately eighteen months there, including a left

---

   [1] Plaintiff alleges that Opco is liable based upon its ownership interest in Stoney Point.

hand fracture, a urinary tract infection, sepsis due to the urinary tract infection, nontraumatic acute kidney injury, repeated pressure ulcers at the base of his spine, and multiple falls.  In addition, Plaintiff alleges that Decedent became infected with Covid-19 at the nursing facility and died on April 16, 2020.[2]  Plaintiff alleges that Defendants failed to adequately staff Stoney Point, failed to take proper infection control precautions to prevent the spread of Covid-19 in the facility, and failed to properly respond to the infections in the facility, and that these failings caused the death of Decedent from Covid-19.

On November 19, 2020, Defendants filed a Notice of Removal, alleging that this Court has jurisdiction under the federal officer statue (28 U.S.C. § 1442(a)(1)) and based on federal question (28 U.S.C. § 1331) because Plaintiff's claims are completely preempted by the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. §§ 247-6d and 247-6e and because it "arises under" federal law and raises a substantial and important federal issue.

**B.     The PREP Act**

Passed in 2005, the PREP Act authorizes the Secretary of Health and Human Services ("HHS") to issue a declaration determining that "a disease or other health condition or other threat to health constitutes a public health emergency."  42 U.S.C. § 247d-6d(b).  If applicable, the PREP Act provides immunity from liability for "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure."[3]  42 U.S.C. § 247d-6d(a)(1).  If immunity applies, the injured person or their survivors may seek compensation from the Countermeasures Injury Compensation Program – a regulatory program that provides reimbursement for some losses associated with the use of covered countermeasures.  42 U.S.C. § 247d-6e.  The only exception to the Act's immunity is when the injury occurs through willful misconduct.  In these instances, the PREP Act provides procedural rules that govern the injured person's claim. 42 U.S.C. § 247d-6d(d).  For example, they must file in the U.S. District Court for the District of Columbia and the burden of proof is clear and convincing evidence.  *Id.*; 42 U.S.C. § 247d-6d(c).

On March 10, 2020, the HHS Secretary issued a Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 ("March 10, 2020 Declaration"), which declared the Covid-19 pandemic a public health emergency under the PREP Act.  85 Fed. Reg. 15198-01.  On December 3, 2020, the HHS Secretary issued a fourth amendment to his March 10, 2020 Declaration.  85 Fed. Reg. at 79,197.  In his December 3, 2020 Amendment, the HHS Secretary defined the "administration" of a covered countermeasure as follows:

---

[2]  Decedent's cause of death was listed as Acute Respiratory Distress Syndrome, Pneumonia, and Covid-19.

[3]  Under the PREP Act, covered countermeasures include: (1) a qualified "pandemic or epidemic product"; (2) a "security countermeasure"; (3) a drug, biological product, or device that the United States Food and Drug Administration ("FDA") has authorized for emergency use; and (4) a "respiratory protective device" that is approved by the National Institute for Occupational Safety and Health ("NIOSH").  42 U.S.C. § 247d-6d(i)(1).

> Administration of the Covered Countermeasure means physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients, management and operation of countermeasure programs, or management and operation of locations for the purpose of distributing and dispensing countermeasures.
>
> Where there are limited Covered Countermeasures, not administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute "relating to . . . the administration to . . . an individual" under 42 U.S.C. 247d-6d.  For example, consider a situation where there is only one dose . . . of a COVID-19 vaccine, and a person in a vulnerable population and a person in a less vulnerable population both request it from a healthcare professional.  In that situation, the healthcare professional administers the one dose to the person who is more vulnerable to COVID-19.  In that circumstance, the failure to administer the COVID-19 vaccine to the person in a less-vulnerable population "relat[es] to . . . the administration to" the person in a vulnerable population.  The person in the vulnerable population was able to receive the vaccine only because it was not administered to the person in the less-vulnerable population.  Prioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections.

85 Fed. Reg. at 79,197.

## II.     Legal Standard

A motion to remand is the proper procedure for challenging removal.  *See N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1038 (9th Cir.1995).  The removal statute is strictly construed, and any doubt about the right of removal is resolved in favor of remand.  *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992); *see also Prize Frize, Inc. v. Matrix, Inc.*, 167 F.3d 1261, 1265 (9th Cir.1999).  Consequently, if a plaintiff challenges the defendant's removal of a case, the defendant bears the burden of establishing the propriety of the removal.  *See Gaus*, 980 F.2d at 566; *see also Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir.1996) (citations and quotations omitted) ("Because of the Congressional purpose to restrict the jurisdiction of the federal courts on removal, the statute is strictly construed, and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."*)*.

## III.    Discussion

In her Motion, Plaintiff argues that Defendants have failed to establish that subject matter jurisdiction exists.  Specifically, Plaintiff argues that federal officer removal is not supported because Defendants were not "acting under" the direction of a federal officer and Defendants cannot establish a casual connection between their actions and an alleged official duty.  In addition, Plaintiff argues that Defendants' removal on the basis of federal question lacks merit because Plaintiff's Complaint does not present a federal question on its face and the PREP Act does not preempt Plaintiff's claims.  In its Opposition, Defendants argue that it has established that

subject matter jurisdiction exists. Specifically, Defendants argue that Plaintiff's claims fall within the provisions of the PREP Act and that there is embedded federal question jurisdiction over Plaintiff's claims. Defendants also argue that Defendants were "acting under" the direction of a federal officer and that there is a casual nexus between Plaintiff's claims and the actions taken by Defendants pursuant to the federal direction.

### A.     Federal Officer Removal

Defendants argue that federal officer removal is available because they were "acting under" the direction of a federal officer. Specifically, Defendants argue that they were acting pursuant to directives issued by the Centers for Disease Control and the Centers for Medicare and Medicaid Services ("CMS"), and the California Department of Public Health ("CDPH") that were highly detailed and specifically aimed at helping achieve the federal government's efforts to stop or limit the spread of Covid-19.

Federal officer removal is available under 28 U.S.C. § 1442(a) if "(a) [the removing party] is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'"[4] *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018). In this case, Defendants have failed to establish that they acted "pursuant to a federal officer's directions" and that there is a "causal nexus" between Defendants' actions and Plaintiffs' claims. Specifically, the directives that Defendants rely on are nothing more than "general regulations and public directives regarding the provision of medical services." *Martin v. Serrano Post Acute LLC*, 2020 WL 5422949 (C.D. Cal. Sept. 10, 2020) (*quoting Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153 (2007)); *see also Saldana v. Glenhaven Healthcare LLC*, 2020 WL 6713995 (Oct. 14, 2020) (holding that where the defendants argued that "in taking steps to prevent the spread of COVID-19, [they] did so in compliance with CDC and CMS directives, which were aimed at helping achieve the federal government's efforts at stopping or limiting the spread of COVID-19," such general regulations and public directives were "insufficient" to confer jurisdiction under the federal officer removal statute). In addition, "[a] private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official . . . even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Martin*, 2020 WL 5422949 (*quoting Watson*, 551 U.S. 142, 153).

Accordingly, the Court concludes that Defendants have failed to demonstrate that removal was proper under the federal officer removal statute.[5] *See* 28 U.S.C. § 1442(a)(1).

---

[4] It is undisputed that Defendants are persons for the purposes of the statute.

[5] Because the Court concludes that Defendants have failed to demonstrate that Defendants acted "pursuant to a federal officer's directions" and failed to demonstrate that there is a "causal nexus" between Defendants' actions and Plaintiffs' claims, the Court need not determine if Defendants have asserted a colorable federal defense.

**B.      Complete Preemption**

Defendants also argue that this action was properly removed based on federal question jurisdiction because Plaintiff's state law claims are completely preempted by the PREP Act.

**1.      Legal Standard for Complete Preemption**

"Removal based on federal-question jurisdiction is reviewed under the longstanding well-pleaded complaint rule." *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018). The "well-pleaded complaint rule,' provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2003) (*quoting Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).  The federal issue "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal."  *Id*. (*quoting Gully v. First Nat. Bank*, 299 U.S. 109, 113 (1936) (holding that the federal controversy cannot be "merely a possible or conjectural one")).  "Thus the rule enables the plaintiff, as 'master of the complaint,' to 'choose to have the cause heard in state court' 'by eschewing claims based on federal law.'"  *Id*. (*quoting Caterpillar*, 482 U.S. at 399).

Complete preemption is an exception to the well-pleaded complaint rule.  "[T]he complete preemption doctrine, provides that 'Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1243–44 (9th Cir. 2009) (*citing Toumajian v. Frailey*, 135 F.3d 648, 653 (9th Cir. 1998) (*quoting Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987)).  If complete preemption applies, "the state-law claim is simply 'recharacterized' as the federal claim that Congress made exclusive."  *Hansen*, 902 F.3d at 1058 (*quoting Vaden v. Discover Bank*, 556 U.S. 49, 61 (2009)).  "[W]hen a federal statute wholly displaces the state-law cause of action through complete preemption," the state claim can be removed.  *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).

Complete preemption is extremely "rare."  *Hansen,* 902 F.3d at 1057. The Supreme Court has found complete preemption applicable to only three federal statutes.  *See City of Oakland v. BP PLC*, 969 F.3d 895, 905 (9th Cir. 2020) (noting that complete preemption applies only to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, § 502(a) of the Employee Retirement Income Security Act of 1974, and §§ 85 and 86 of the National Bank Act).  While discussing the limited nature of the doctrine, the Ninth Circuit held that "complete preemption for purposes of federal jurisdiction under Section 1331 exists when Congress: (1) intended to displace a state-law cause of action, and (2) provided a substitute cause of action."  *City of Oakland,* 969 F.3d at 906 (*citing Hansen*, 902 F.3d at 1057).  Thus, before complete preemption can apply to a plaintiff's state law claims, the "the claims at issue must fall within the scope of the relevant federal statute." *Jackson v. Big Blue Healthcare, Inc.*, 2020 WL 4815099, at *3–4 (D. Kan. Aug. 19, 2020) (*citing Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 9 n.5 (2003)).

**2.      Plaintiff's Claims Are Not Completely Preempted**

The parties disagree on whether Plaintiff's claims fall within the scope of the PREP Act. Plaintiff argues the PREP Act does not apply to her claims because her claims are based on a

failure to implement an effective infection control program – including failing to properly train staff, failing to screen staff for symptoms of Covid-19 before they were allowed to enter the nursing facility, failing to separate residents suspected of being infected with Covid-19 from non-infected residents, and failing to enforce social distancing protocols – rather than the use or misuse of a covered countermeasure.  Defendants argue that the PREP Act applies to Plaintiff's claims because the HHS Secretary's December 3, 2020 Amendment makes clear that the failure to use a covered countermeasure can fall within the PREP Act's protections and that such failures – such as the failure to use masks and other PPE and the failure to test for Covid-19 – are the basis of Plaintiff's claim that Defendants failed to implement an effective infection control program.

Although the HHS Secretary's December 3, 2020 Amendment makes clear that an "inaction claim" is not necessarily beyond the scope of the PREP Act, such claims only fall under the scope of the PREP Act where: (1) there are limited covered countermeasures; and (2) there was a failure to administer a covered countermeasure to one individual because it was administered to another individual.  85 Fed. Reg. at 79,197 (illustrating a causal relationship between (1) administering and (2) not administering a covered countermeasure where person-A "was able to receive the [single covered countermeasure] only because it was not administered to" person B).  Thus, pursuant to the HHS Secretary's December 3, 2020 Amendment, there is only immunity for "inaction claims" when the failure to administer a covered countermeasure to one individual has "a close causal relationship" to the administration of that covered countermeasure to another individual.  *Anson v. HCP Prairie Village KS Opco LLC*, 2021 WL 308156 (D. Kan. Jan. 29, 2021).

In this case, Plaintiff does not allege that Decedent's death was "causally connected" to the administration or use of any covered countermeasure.  Instead, Plaintiff alleges "precisely the opposite" – that it was inaction, rather than action, by Defendants that caused Decedent's death.  *Id.* (*quoting Eaton v. Big Blue Healthcare, Inc.*, 2020 WL 4815085, at *7–8 & n.13 (D. Kan. Aug. 19, 2020)); *see also Sherod v. Comprehensive Healthcare Management Services, LLC*, 2020 WL 6140474, at *7 (W.D. Penns. Oct. 16, 2020) (holding that plaintiff's "allegations do not fall within the purview of the PREP Act" where plaintiff's "negligence, misrepresentation, wrongful death and survivor claims are not causally connected to [the facility's] use of covered countermeasures" because plaintiff "alleges that [the facility's] *failure to utilize* countermeasures caused the death of the decedent" (second emphasis added)).  Indeed, even assuming that Plaintiff's allegations could be construed as alleging the administration of covered countermeasures, she does not allege that Decedent's death resulted from Defendants' decisions to administer those covered countermeasures to other individuals.  *Eaton*, 2020 WL 4815085, at *7 (holding that the PREP Act was "inapplicable" to the plaintiff's claims because the plaintiff's complaint contained "no clear allegation that any injury or claim of loss was caused by the administration or use of any covered countermeasure, let alone that the loss arose out of, related to, or resulted from the same").

In addition, even assuming that the PREP Act might arguably provide Defendants immunity on some of Plaintiffs' claims[6], the Court concludes that the PREP Act does not satisfy the Ninth Circuit's two pronged complete preemption test.  *City of Oakland*, 969 F.3d at 905.  The doctrine of complete preemption applies in very limited circumstances; this is not the "rare" statute where

---

[6]  The Court does not conclude that Defendants are entitled to PREP Act immunity on any of Plaintiff's claims.  The Los Angeles Superior Court will make that determination on remand.

complete preemption applies. *Hansen*, 902 F.3d at 1057. First, the PREP Act does not fully replace state law claims related to Covid-19. As many courts have held, the PREP Act does not prevent plaintiffs from bringing state law claims based on an alleged failure to use covered countermeasures. *See, e.g., Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, 2020 WL 4671091, at *1, *9 (D.N.J. Aug. 12, 2020) (holding that the failure to "observe a wide range of appropriate safety precautions" "would not be preempted by the PREP Act, which is designed to protect those who employ countermeasures, not those who decline to employ them"); *Jackson*, 2020 WL 4815099, at *8 (holding the PREP Act does not apply to "the non-administration or non-use of covered countermeasures" and concluding that the PREP Act did not apply to plaintiff's claims because "[d]efendants fail[ed] to point to any claim in the complaint where Plaintiff alleges that the administration or use of any of these things [covered countermeasures] caused the decedent's death"). These cases plainly hold that the PREP Act does not "wholly displace" state law claims that implicate healthcare entities and Covid-19. *Beneficial Nat'l Bank*, 539 U.S. at 8.

Second, the PREP Act does not provide a substitute cause of action for Plaintiff's claims. Instead, when applicable, the PREP Act provides immunity to defendants on state law claims. However, "it is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). Indeed, state law may be completely preempted only when "it has been replaced by federal law – but this happens because federal law takes over all similar claims, not because there is a preemption defense." *Lehmann v. Brown*, 230 F.3d 916, 919–20 (7th Cir. 2000). Thus, "immunity against state law or preemption of state law is not the equivalent of complete preemption and does not provide removal jurisdiction."[7] *Martin*, 2020 WL 5422949, at *2 (holding that the question of whether federal courts have exclusive jurisdiction under the PREP Act "largely irrelevant" "because none of the claims in the complaint, on its face, are brought under that Act").

Accordingly, the Court concludes that it does not have subject matter jurisdiction based on federal question grounds.

C. **Embedded Question of Federal Law**

Finally, Defendants argue that there is embedded federal question jurisdiction over Plaintiffs' claims. In order to establish federal jurisdiction due to a "substantial, embedded question of federal law," a "state law claim [must] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc.*

---

[7] Moreover, it is largely irrelevant that federal courts have exclusive jurisdiction under the PREP Act because none of the claims alleged in Plaintiff's Complaint are brought under the PREP Act. If Defendants believe that some or all of Plaintiff's state law claims are barred by the PREP Act, the appropriate response will be to file a demurrer in state court. If the state court dismisses the state law claims, Plaintiff can then decide if she wishes to file claims under the PREP Act in the District of the District of Columbia, the court with exclusive jurisdiction over such claims. *See* 42 U.S.C. § 247d-6d(e)(1).

*v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).  In other words,  "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251, 258 (2013).  In addition, "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true when the state claim 'necessarily raise[s]' a disputed federal issue, as *Grable* separately requires.  The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole."  *Gunn*, 568 U.S. at 260.  "[T]he mere use of a federal statute as a predicate for a state law cause of action does not necessarily transform that cause of action into a federal claim."  *Nevada v. Bank of America Corp.*, 672 F.3d 661, 675 (9th Cir. 2012).  Nor does "the question whether a particular claim arises under federal law depend . . . on the novelty of the federal issue."  *Id.* (*quoting Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 817 (1986)).

In this case, Defendants argue that they meet this standard for essentially the same reasons that they argue there is complete preemption – because the PREP Act raises a substantial federal issue that is disputed.  However, the federal issue raised relates to Defendants' defense, not the claims alleged by Plaintiff.  In addition, Defendants have failed to demonstrate that this particular case raises substantial questions important to "the federal system as a whole," and, instead, they merely argue in conclusory fashion and without any support that "[t]his case involves issues of national importance."

Accordingly, the Court concludes that it does not have subject matter jurisdiction based on embedded federal question grounds.  *Martin*, 2020 WL 5422949.

## IV.     Conclusion

For all the foregoing reasons, Plaintiff's Motion is **GRANTED,** and this action is **REMANDED** to Los Angeles County Superior Court for lack of subject matter jurisdiction.  *See* 28 U.S.C. § 1447(c).

IT IS SO ORDERED.